Walter **BALLINGER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–9808–CR–412.

Court of Appeals of Indiana.

Oct. 19, 1999.

---

John L. Tompkins, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

On June 22, 1997, Jackiel Heck ("Heck") and appellant-defendant Walter Ballinger ("Ballinger") were involved in a vehicle collision that resulted in Heck's death. Ballinger appeals from his convictions arising out of that conviction: Count I, operating a vehicle while intoxicated causing death as a class C felony [1] ("OWI death") and Count II, causing the death of another person while operating a vehicle with at least ten percent by weight of alcohol in his blood, a class C felony ("BAC death").[2] We affirm in part and reverse and remand in part.

### Issues

Ballinger raises the following five restated issues for our review:

(1) whether the State presented sufficient evidence to establish beyond a reasonable doubt that Ballinger was intoxicated at the time of the accident;

(2) whether the State presented sufficient evidence to establish beyond a

---

1. IND.CODE § 9–30–5–5 provides in relevant part:
   (a) A person who causes the death of another person when operating a motor vehicle:
   (1) with at least ten-hundredths percent (0.10%) of alcohol by weight in grams in:
   (A) one hundred (100) milliliters of the person's blood; or
   (B) two hundred ten (210) liters of the person's breath;
   (2) . . .; or
   (3) while intoxicated;
   commits a Class C felony. . . .

2. IND CODE § 9–30–5–5.

reasonable doubt that Ballinger's blood contained at least ten hundredths percent by weight of alcohol;

(3) whether the State presented sufficient evidence to establish beyond a reasonable doubt that the accident caused Heck's death;

(4) whether evidence of Heck's previous OWI conviction was properly excluded under Ind. Evidence Rule 403; and

(5) whether Ballinger's sentence was unreasonable given his character and the nature of the offense.

We raise the following issue sua sponte:

whether the trial court erred by not vacating Ballinger's conviction for Count II, BAC death.

### Facts and Procedural History

We set forth the following facts most favorable to the judgment of conviction: on June 22, 1997, at approximately 1:57 a.m., Heck was driving his motorcycle and collided with the passenger side of Ballinger's truck. Heck suffered a serious wound to his neck, from which he lost several pints of blood, and died shortly thereafter. Several witnesses were present at the scene of the accident and identified Ballinger as the driver of the truck with which Heck's motorcycle collided. On June 23, 1997, Ballinger was charged by information as follows:

COUNT I

Walter Ballinger, on or about June 22, 1997, did cause the death of another person, namely: Jackiel Heck, when operating a motor vehicle while intoxicated;

COUNT II

Walter Ballinger, on or about June 22, 1997, did cause the death of another person, namely: Jackiel Heck, when operating a vehicle with at least ten-per-

cent (0.10%) by weight of alcohol in the person's blood;

all of which is contrary to statute and against the peace and dignity of the State of Indiana....

Ballinger was tried by a jury on May 4, 1998, and May 6, 1998. At the conclusion of the second day of trial, the jury found Ballinger guilty of OWI death and BAC death. The trial court sentenced Ballinger on June 3, 1998, stating in part as follows: [3]

I believe, due to the types of offenses that were charged, that the minutes should reflect that a verdict of guilty was found on Count Two, but a judgment of conviction I don't believe can be entered on Count Two because of the offense which is charged in Count One.... So, we'll be sentencing the defendant on just Count One here today....

The court finds one aggravating factor. The defendant has one prior conviction, ironically for operating a motor vehicle while intoxicated. Court finds two mitigating factors. The defendant's health is poor; second, that the—and I do not mean to, in any manner, drag Mr. Heck through the mud, but he did have quite a high blood alcohol content in his body that night as well. So, it appears that that could have been a contributing factor to this accident. But, certainly, the court agrees with the jury's verdict. The defendant is guilty of this offense. Weighing all these matters out, the defendant is sentenced as follows: Defendant is sentenced to eight (8) years at the Indiana Department of Correction; four (4) years are executed; four (4) are suspended. The first two (2) years of that executed sentence will be served at the Indiana Department of Correction. The second two (2) years of that executed sentence will be served at Riverside Community Work Release Center. Following the defendant's executed sen-

---

**3.** We must rely solely on the trial court's oral pronouncements at the sentencing hearing, as the record and appellant's brief do not contain a copy of the sentencing order as required by Ind. Appellate Rule 8.3(A)(4).

tence the defendant will be placed on probation for two (2) years. The defendant's driving privileges are ordered suspended for five (5) years. . . .

Ballinger now appeals. Additional facts will be supplied as necessary.

## Discussion and Decision

### I. Sufficiency of Evidence of Ballinger's Intoxication

Ballinger first argues that the State's evidence was insufficient to establish that he was intoxicated at the time of the accident. We initially note that when reviewing claims of insufficient evidence, this Court neither reweighs the evidence nor judges the credibility of the witnesses. *Hornback v. State*, 693 N.E.2d 81, 84 (Ind. Ct.App.1998). We consider only the evidence most favorable to the verdict together with all reasonable inferences to be drawn therefrom. *Id.* We will affirm the verdict if the probative evidence and the reasonable inferences to be drawn from that evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Weaver v. State*, 702 N.E.2d 750, 753 (Ind.Ct.App. 1998).

In challenging the jury's verdict that he operated his vehicle while intoxicated causing death, Ballinger correctly cites the following statutory definition of "intoxicated," which "means under the influence of (1) alcohol; ... so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties to an extent that endangers a person." IND.CODE § 9–13–2–86. He also acknowledges, correctly, that proof of intoxication may be established by showing impairment, and that it does not require proof of a Blood Alcohol Content

("BAC") level. *See Jellison v. State*, 656 N.E.2d 532, 535 (Ind.Ct.App.1995). Evidence of the following can establish impairment: (1) the consumption of significant amounts of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; (7) slurred speech. *See id.* at 535–36; *see also Staley v. State*, 633 N.E.2d 314, 317–18 (Ind.Ct.App.1994).

Indianapolis Police Officer Kurt Greggs, the first officer to arrive at the scene of the accident, testified at trial that Ballinger, "did have a slight odor of alcoholic beverage about his person. And he didn't necessarily walk directly from the area we left to my car in the most straight line." He also characterized Ballinger's balance as "a little unstable," and his eyes as "a tad bit glassy." Indianapolis Police Officer and crash investigator Jeffrey Patterson, who arrived at the scene shortly after Officer Greggs, testified that when he began questioning Ballinger in the back of his patrol car, he "noticed an odor of an alcoholic beverage" coming from his breath and that Ballinger "had very glassy red eyes," and his speech was "slurred." Officer Patterson then conducted a "horizontal gaze nystagmus" field sobriety test, a "nine-step walk heel-to-toe" field sobriety test, and a "one-leg stand field sobriety test." He testified that Ballinger failed all three field sobriety tests and had difficulty maintaining his balance.

Ballinger asserts that in spite of this overwhelming evidence of his intoxication, there is no evidence that his *driving* was impaired, because at the time of the accident, his truck's lights were on; he was not speeding; and his turn signal was on. Citing IND.CODE §§ 9–30–6–2 [4] and 9–30–6–15,[5] he also argues that "there is no pre-

---

**4.** "(c) A [chemical] test administered under this chapter must be administered within three (3) hours after the law enforcement officer had probable cause to believe the person committed an offense under [IND.CODE § ] 9–30–5 or a violation under [IND.CODE § ] 9–30–15."

**5.** IND CODE § 9–30–6–15 establishes rebuttable presumptions regarding evidence of blood alcohol content shown by chemical tests.

sumption that evidence of intoxication observed up to three hours after driving [is an accurate indication] of intoxication at the time of driving," because "the probative value of observations of the foregoing factors decreases over time, and eventually becomes zero."

Ballinger essentially claims that he became more intoxicated as time passed, and thus the evidence of his intoxication subsequent to the accident is not probative of whether his driving was impaired. We find this argument to be nothing more than a request for us to reweigh the evidence. Moreover, we have held that a reasonable person could conclude that a defendant was intoxicated from an officer's testimony that a defendant was exhibiting evidence of impairment two hours after an accident. *See Staley,* 633 N.E.2d at 318. There is no evidence in the instant case that an unreasonable length of time passed between the accident and Officer Patterson's observations and the field sobriety tests; furthermore, common sense would dictate that as time passed, Ballinger would only have become *less* intoxicated, not more. Immediately prior to taking a taped statement from Ballinger, Officer Patterson had him sign a form containing an advice and waiver of rights; the time at the top of the form reads 3:22 a.m. Officer Patterson's testimony revealed that he administered the field sobriety tests right after he took the taped statement. As we have noted above, the accident occurred between 1:30 and 2:00 a.m. The jury was made aware of the sequence of events and was able to gauge the passage of time between the accident and the evidence of impairment exhibited by Ballinger. We will not substitute our judgment for theirs as to whether Ballinger was intoxicated at the time he was operating his vehicle and the accident occurred.

## II. Sufficiency of Evidence of Ballinger's BAC

Ballinger next contends that the State did not present sufficient evidence to establish beyond a reasonable doubt that his blood contained at least ten-hundredths percent of alcohol by weight. He specifically complains that the admitted BAC Datamaster ticket "does not contain any units or indicators that the .16 value stated [on the ticket] is in either of the acceptable ratios," i.e., .10% of alcohol by weight in grams per one hundred milliliters of Ballinger's blood, or .10% of alcohol by weight in two hundred ten liters of his breath.

■ At this juncture, we must address sua sponte the following remarks made by the trial court at Ballinger's sentencing hearing:

[J]udgment of conviction I don't believe can be entered on Count Two because of the offense which is charged in Count One. . . . So, we'll be sentencing the defendant on just Count One here today. . . .

A defendant may be charged and tried, as Ballinger was, with greater and lesser included offenses under the same indictment or information. *Webster v. State,* 708 N.E.2d 610, 616 (Ind.Ct.App.1999), *trans. denied.* However, a defendant may not be convicted and sentenced upon the lesser included offense when a sentence is also imposed upon the greater offense. *Id.; see also McInchak v. State,* 560 N.E.2d 546, 549 (Ind.Ct.App.1990) ("driving with a blood alcohol content of .10% or more is a lesser included offense of driving while intoxicated, and convictions of both cannot stand.") The record in the instant case contains only an abstract of judgment generated by the trial court in conjunction with Ballinger's sentencing. The abstract lists two convictions, both for operating a motor vehicle while intoxicated as a class C felony under IND.CODE 9–30–5–5. This is clearly erroneous, not only because of the double jeopardy concerns raised by Ballinger's conviction for a lesser included offense, but also because there was only one death caused by his accident with Heck. *See* IND.CODE 9–30–5–5(b) ("A person who violates subsection (a) commits a separate offense for each person whose

death is caused by the violation of subsection (a).").

In spite of the trial court's decision to sentence Ballinger solely on Count I, it appears that the entry of judgment of conviction was never properly amended to effect the mandatory vacation of Count II.[6] Thus, we must remand this matter to the trial court with instructions to vacate Count II.

■ While we acknowledge that the State is required to present evidence correlating the amount of alcohol in a defendant's breath with the amount of alcohol in his blood, *see Sales v. State,* 715 N.E.2d 1009, 1010 (Ind.Ct.App.1999), the State's failure to do so in this case constitutes harmless error, as the BAC death conviction must be vacated.

### III. Sufficiency of Evidence Regarding Causation

■ Ballinger's third contention is that the State presented insufficient evidence to establish beyond a reasonable doubt that the accident caused Heck's death. His first argument on this point is a challenge to the constitutionality of IND.CODE 9-30-5-5 as applied by Indiana's state courts. Ballinger acknowledges that our supreme court has held that the State does not need to establish a causal link between a defendant's intoxication and the fact that a death resulted from the defendant's driv-

ing. *Micinski v. State,* 487 N.E.2d 150, 154 (Ind.1986).[7] The *Micinski* court held that

> Analysis of [IND.CODE § 9-11-2-4, now IND.CODE § 9-30-5-4] should focus on the driver's acts and not on speculation about whether he could have stopped if he had been sober. If the driver's conduct caused the injury, he commits the crime; if someone else's conduct caused the injury, he is not guilty.... This is not to say that a drunk driver who hits a child who has run out from between two parked cars is not entitled to ask a jury to find him not guilty because there is reasonable doubt whether he caused the collision.

*Id.* This Court has followed *Micinski* on a number of occasions. *See, e.g., Smith v. State,* 496 N.E.2d 778, 781 (Ind.Ct.App. 1986), *trans. denied; Gokey v. State,* 510 N.E.2d 703, 707 (Ind.Ct.App.1987). It is because of the *Micinski* interpretation, Ballinger argues, that the statute purportedly runs afoul of the due process protections afforded Ballinger by the Indiana and U.S. Constitutions: "Since the court[-]created [standard] requires only the proof of causing an accident, it relieves prosecutors of any burden of proving that a driver actually cause[d] a death. Therefore, the challenged standard eliminates an element contained in the plain language of the statute, and requires a defendant to

---

**6.** We reiterate, however, that which this Court has noted on more than one occasion:

> We acknowledge that a trial court might understandably prefer not to vacate a conviction of a lesser offense in light of a conviction on the greater offense if there is any likelihood of an appellate reversal of the greater conviction. If, in such instance, there was no conviction of record on the lesser offense, quite obviously such conviction could not be affirmed. While the appellate forum, in reversing the greater conviction, might remand, giving authority to the trial court to enter a conviction upon the lesser offense, trial courts are not required to be so clairvoyant as to anticipate that prospect.

*Abron v. State,* 591 N.E.2d 634, 637 (Ind.Ct. App.1992), *trans. denied.*

**7.** The *Micinski* court interpreted the statute now codified at IND.CODE § 9-30-5-4, the language of which is virtually identical to IND. CODE § 9-30-5-5, but which sets out the offense of operating a vehicle while intoxicated causing "serious bodily injury" as opposed to "death." In *Micinski,* the Indiana Supreme Court reasoned that it found "nothing in the statute to indicate that the General Assembly intended to require that the State prove a causal link between the driver's intoxication and the fact that injury resulted from his driving." 487 N.E.2d at 154. We agree with Ballinger's apparent conclusion that because *Micinski* interpreted a statute whose language is extremely similar to that of the statute at issue in his case, the same reasoning should logically apply.

prove that his actions did not cause the death." (Brief of Appellant, p. 16.)

■ We must, however, decide this case without reaching the constitutional question raised by Ballinger. "Both state and federal courts traditionally foreswear deciding a constitutional question unless no non-constitutional grounds present themselves for resolving the case under consideration." *Indiana Wholesale Wine & Liquor Co., Inc. v. State*, 695 N.E.2d 99, 107 (Ind.1998) (citing *Citizens Nat'l Bank of Evansville v. Foster*, 668 N.E.2d 1236, 1241 (Ind.1996)); *see also State v. Darlington*, 153 Ind. 1, 4, 53 N.E. 925, 926 (1899) ("[The Indiana Supreme Court] has repeatedly held that [constitutional] questions will not be decided unless such state decision is absolutely necessary to a disposition of the cause on its merits."). As the reviewing court in the instant case, we decline to "violate [our] duty 'first to ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'" *Indiana Wholesale Wine & Liquor Co., Inc.*, 695 N.E.2d at 107 (quoting *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 348, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring)).

The instant case is capable of resolution without our analysis of the constitutionality of IND.CODE § 9–30–5–5. As suggested in *Micinski*, Ballinger has raised the issue of whether Heck's intoxication or other faulty conduct was the actual cause of the accident that resulted in his death; he argues that Heck was speeding but could have braked before hitting Ballinger's truck, and that he had a BAC of .177 himself, which arguably impaired his ability to react while driving his motorcycle.

We reiterate, however, that we cannot reweigh the evidence nor reassess the credibility of witnesses. *Smith*, 496 N.E.2d at 781. Just as the jury heard evidence that Heck was speeding and had a BAC of .177, it also heard from different witnesses that Heck was only going five miles per hour over the speed limit; that regardless of a reduction in his speed, his motorcycle still would have collided with Ballinger's truck; and that some witnesses were equivocal as to whether Ballinger's headlights were on. From such evidence, the jury could have reasonably concluded that Ballinger caused the accident.

## IV. Exclusion under Evid. R. 403 of Heck's Prior OWI Conviction

■ Ballinger next argues that the trial court erred by excluding evidence of Heck's previous OWI conviction pursuant to Indiana Evid. Rule 403.[8] The decision whether to admit evidence is in the sound discretion of the trial court and will be afforded great deference on appeal. *Tynes v. State*, 650 N.E.2d 685, 687 (Ind. 1995). A trial court's decision whether to admit evidence will not be reversed absent a showing of manifest abuse of that discretion resulting in denial of a fair trial. *Minnick v. State*, 544 N.E.2d 471, 477 (Ind.1989).

In the instant case, the trial court agreed with Ballinger that the State had "opened the door" to admission of Heck's 1991 conviction for driving while intoxicated, because it had elicited testimony regarding Heck's skill as a driver and for how many years he had been driving a motorcycle. However, the record also shows that the trial court balanced the putative probative value of Heck's conviction against the danger that it would unfairly prejudice the jury and concluded that because Heck's conviction had occurred six years before the accident that caused his death, it was overly prejudicial when weighed against its relatively slight probative value. We find no abuse of discretion in the trial court's exclusion of the

---

**8.** Evid. R. 403 provides as follows:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or needless presentation of cumulative evidence.

evidence regarding Heck's prior conviction.

### V. *Reasonableness of Ballinger's Sentence*

Finally, Ballinger challenges the severity of his sentence, arguing that it was unreasonable given his character and the nature of the offense. Sentencing decisions rest within the sound discretion of the trial court and are reversed only for an abuse of discretion. *Blanche v. State*, 690 N.E.2d 709, 714 (Ind.1998). This Court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 17(B).

When sentencing Ballinger, the trial court clearly balanced one aggravating factor—his prior conviction for operating a motor vehicle while intoxicated—against two mitigating factors—Ballinger's poor health and the fact that Heck's BAC "could have been a contributing factor to this accident." In light of the nature of the offense, a class C felony from which a death resulted, we do not find that imposition of the presumptive sentence, of which four years were ordered suspended, and two of the executed years were ordered to be served at a work-release center rather than in prison, is manifestly unreasonable.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed in part as to Count I and Ballinger's sentence, and reversed and remanded in part with instructions to vacate Ballinger's conviction for Count II.

KIRSCH and DARDEN, JJ., concur.